UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTINA AGHAJANYAN; N.M., a minor child, by and through their guardian ad litem, HAKOB MANUKYAN; and H.M., a minor child, by and through their guardian ad litem, HAKOB MANUKYAN,<br>Petitioners,<br>v.<br>JUSTIN M. DE LA TORRE, Chief Patrol Agent, U.S. Border Patrol, San Diego Sector; RODNEY S. SCOTT, Commissioner, U.S. Customs and Border Protection; DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security,<br>Respondents. | Case No.: 3:26-cv-5636-JES-JAB<br><br>**ORDER GRANTING THE PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

Before the Court is Petitioners Kristina Aghajanyan, N.M., and H.M.'s ("Petitioners") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. On October 7, 2026, Respondents filed their Return to the Petition. ECF No. 5

("Return"). On October 9, 2026, Petitioners filed a Traverse. ECF No. 6 ("Trav."). For the reasons set forth below, this Court **GRANTS** the Petition.

## I. BACKGROUND

Petitioners—mother Kristina Aghajanyan and her two minor children N.M. and H.M., ages nine and five, respectively—fled Armenia in early September 2026. Pet. ¶ 8. They followed the minors' father, Hakob Manukyan, who previously fled Armenia for the United States and who currently resides in Los Angeles, California. *Id.* ¶¶ 4, 21. Petitioners entered the United States on September 18, 2026, near the San Ysidro port of entry and were detained by CBP agents shortly thereafter. *Id.* ¶ 24. Petitioners have been held at the CBP Sector Headquarters in Chula Vista, California, since their initial detention. *Id.* Sector Headquarters is a secure holding facility that is neither licensed for the care of children nor designed for families. *Id.* ¶ 25.

Petitioners participated in a credible fear interview on September 20, 2026, which resulted in a negative credible fear determination. *Id.*¶¶ 30, 33. Petitioners sought review of the determination by an immigration judge ("IJ"). *Id.* ¶ 33. On September 29, 2026, the IJ vacated the negative credible fear determination as to Armenia but affirmed it as to Costa Rica, the alternative country of removal. *Id.* ¶¶ 34, 35. Petitioners subsequently received expedited orders of removal to Costa Rica and remain in custody pursuant to the removal period. *Id.* ¶ 35.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are

within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III. DISCUSSION

Respondents bring three claims in their Petition: (1) detention in an unlicensed facility in violation of the Fifth Amendment and the Flores Settlement Agreement ("FSA"); (2) custody without lawful authority in violation of 8 C.F.R. § 287.3(d), CPB's TEDS Standards, and the Fifth Amendment; and (3) no expedited removal order validly issued in violation of 8 U.S.C. 1225(b)(1)(A)(ii). Because the Court finds that Petitioners are entitled to relief on the first claim, it does not address the merits of claims 2 or 3.

### A. This Court has Jurisdiction over Petitioner's FSA claim.

Respondents allege that this Court lacks jurisdiction over Petitioners' claims for three reasons: (1) *Aleman Gonzalez* clarified that 8 U.S.C. § 1252(f)(1) divests district courts of jurisdiction to enforce the FSA; (2) other jurisdiction-stripping provisions of 8 U.S.C. § 1252 prevent Petitioners from challenging decisions relating to their removal order; and (3) Petitioners' claims are improper habeas claims because they do not entitle Petitioners to release. The Court finds that each of Respondents' arguments is without merit as applied to Petitioners' first claim, alleging unlawful detention in violation of the FSA.

#### 1. *Aleman Gonzalez* does not preclude review of Petitioners' individual FSA claims.

Respondents claim that the Court in *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022), effectively divested district courts of jurisdiction over enforcement of the FSA. Return at 4–5. Because the Court in *Aleman Gonzalez* held that 8 U.S.C. § 1252(f)(1) prohibits district courts from granting class-wide injunctive relief that affects certain provisions of the INA, Respondents contend that the FSA itself was an unlawful exercise of jurisdiction. *Id.* at 5. As a result, Respondents seem to argue that *no court* has jurisdiction to enforce the FSA. *Id.* at 4–5.

Respondents' argument is without merit. First, Respondents offer no authority that has held the FSA generally unenforceable under their interpretation of *Aleman Gonzalez*

or any other authority. *See generally id.* at 2–6. Respondents cite *Galvez v. Jaddou*, 52 F.4th 821, 830 (9th Cir. 2022), where the Ninth Circuit found that Section 242(f)(1) "applies to *certain* injunctions that enforce or restrain *certain* provisions of the INA." *Galvez*, 52 F.4th at 830 (emphasis added). However, *Jaddou* does not discuss the FSA (the relevant injunction) nor 8 U.S.C. § 1225(b) (the relevant provision). Moreover, Respondents implicitly acknowledged that the FSA remains effective when they pointed out the pending appeal of the *Flores* court's *denial* of the government's motion to terminate the FSA. Return at 5. In contrast, the Ninth Circuit has repeatedly enforced the FSA in the decades since 8 U.S.C. § 1252(f)(1) was enacted. *See, e.g.*, *Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016); *Flores v. Rosen*, 984 F.3d 720 (9th Cir. 2020); *Flores v. Barr*, 977 F.3d 742 (9th Cir. 2020).

Second, *Aleman Gonzalez* and Section 1252(f)(1) only prohibit *class-wide* injunctive relief, not the individual relief Petitioners presently seek. Section 1252(f)(1) states that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation" of certain provisions of the INA, "other than with respect to the application of such provisions to an individual alien." 8 U.S.C. § 1252(f)(1). The *Aleman Gonzalez* Court clarified that the provision "prohibits federal courts from granting classwide injunctive relief" but "does not extend to individual cases." 596 U.S. at 549. Here, the individual-alien exception applies: Petitioners seek relief for themselves as individuals, not for the entire *Flores* class.

Because Petitioners seek individualized relief and because the FSA remains enforceable despite *Aleman Gonzalez*, Section 1252(f)(1) does not divest this Court of jurisdiction.

**2. 8 U.S.C. § 1252 does not strip this Court of jurisdiction over Petitioners' FSA claim.**

Respondents cite three other provisions of Section 1252 that allegedly strip this court of jurisdiction over Petitioner's claim: Section 1252(g), Section 1252(a)(2)(A), and Section 1252(e). Return at 6–11. The Court finds that none of the above provisions apply to

Petitioners' FSA claim, which challenges Petitioners' present custody and not their order of removal. *See generally* Pet. ¶¶ 43–46.

Each of the provisions of Section 1252 that Respondents cite prohibit courts from hearing claims that relate to a petitioner's order of removal. Section 1252(g) prevents the review of claims "arising from" the government's decision "to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). Section 1252(a)(2)(A) bars review of expedited removal orders generally. *See id.* § 1252(a)(2)(A). Sections 1252(e)(2) and (3) provide limited pathways for review of expedited removal orders, including "challenges to the validity of the system" (limited to the District of Columbia) and "narrow habeas corpus proceedings." *See id.* §§ 1252(e)(2)–(3). The latter only allows a court to determine three questions: (1) "whether the petitioner is an alien"; (2) "whether the petitioner was ordered removed under [§ 1225(b)(1)]"; and (3) whether petitioner can prove certain forms of lawful status. *See id.* §§ 1252(e)(2)(A)–(C).

None of these jurisdiction-stripping provisions are applicable to Petitioners' FSA claim. As Petitioners note, their first claim "challenge[s] custody," not "any order." Trav. at 5. This Court agrees: Petitioner's first claim challenges the lawfulness of their custody, including their continued detention in a non-licensed, secure facility and the government's failure to release them to their father pursuant to the FSA. *See generally* Pet. ¶¶ 43–46. Because Petitioners' first claim challenges neither their removal proceedings nor their final order of removal, Respondents' application of Section 1252's jurisdiction-stripping provisions to it is without merit.

**3. Petitioners' FSA claim sounds in habeas because, if successful, it would entitle them to release.**

Respondents allege that Petitioners' claims are "improper habeas claims" because they do not "automatically entitle them to release from detention." Return at 11–12. However, Petitioners claims do entitle them to release, even if that is not their preferred form of relief. *See* Pet. at 19.

As Respondents note, the Ninth Circuit in *Pinson v. Carvajal* developed a test for whether a claim goes to "the core of habeas corpus" and is thus cognizable under the writ: "release is *legally required* irrespective of the relief requested." 69 F.4th 1059, 1072 (9th Cir. 2023) (emphasis in original). Petitioners claim that release is the proper remedy under the FSA, which "creates a presumption in favor of releasing minors" and "is mandatory if the minor presents neither a flight nor a safety risk and a qualified custodian is available." Trav. at 8 (citing *Flores v. Rosen*, 984 F.3d 720, 727–28, 744 (9th Cir. 2020)).

Yet Petitioners need not prove as much. *Pinson* clarified that release is the sole remedy for claims that challenge the validity or lawfulness of detention. 69 F.4th at 1070 ("Release is the only available remedy—and thus a claim is at the core of habeas—if a successful petition demonstrates that the *detention itself* is without legal authorization." (emphasis in original)). Petitioners allege that their continued detention in a non-licensed, secure facility is unlawful under the FSA. Pet. ¶ 46. Unlike in *Pinson*, Petitioners are not challenging the conditions of their confinement, but rather its legal basis. Because "[h]abeas is at its core a remedy for unlawful executive detention" and "[t]he typical remedy for such detention is, of course, release," release would be appropriate should Petitioners establish that their continued detention is unlawful under the FSA. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 536 (2004)).

Having found no bar to jurisdiction, this Court now turns to the lawfulness of Petitioners' present detention.

**B. Petitioner's continued detention in an unlicensed, secure facility is unlawful.**

The FSA set "nationwide standards for the 'detention, release, and treatment of minors,'" including accompanied minors. *Rosen*, 984 F.3d at 726 (citing FSA ¶ 9). It remains binding on the Department of Homeland Security. *Flores v. Sessions*, 862 F.3d 863, 879 (9th Cir. 2017). The Ninth Circuit provided a helpful overview of the FSA's requirements for the detention of minors:

> The Agreement imposes several substantive requirements on the government's detention of minors. It requires the government to "hold minors

> in facilities that are safe and sanitary and that are consistent with the INS's concern for the particular vulnerability of minors" and to "place each detained minor in the least restrictive setting appropriate to the minor's age and special needs." Agreement ¶¶ 11, 12A. Ordinarily, within three days after apprehending and detaining a minor, the government must choose between two options for placing the minor. *Id.* ¶ 12A. The first option, discussed in paragraph 14, is releasing the minor to a parent, legal guardian, adult relative, or another "capable and willing" designated adult or entity. Release is mandatory if the minor presents neither a flight nor a safety risk and a qualified custodian is available. Alternatively, under paragraph 19, the minor may be placed in a facility "licensed by an appropriate State agency to provide residential, group, or foster care services for dependent children." *Id.* ¶ 6. Licensed facilities must be "non-secure as required under state law." *Id.*

*Rosen*, 984 F.3d at 727–28. In short, Respondents had two options for the minor Petitioners' continued detention: transfer to a non-secure, licensed facility or release to a capable guardian.

Petitioners allege that they have been held in an unlicensed, secure CPB facility—namely, the U.S. Border Patrol Sector Headquarters—for nearly a month. Pet. ¶ 44. Petitioners further allege that the minors' father, who resides in Los Angeles, stands ready and able to accept the minors into his custody. *Id.* ¶ 45. Respondents do not contest these allegations, nor do they provide any justification for their failure to release or otherwise transfer the minors to an FSA-compliant facility. *See generally* Return. On this record, the Court finds that Respondents' continued detention of Petitioners H.M. and N.M. in an unlicensed, secure facility is unlawful. The Petition must, therefore, be granted.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Petition for Writ of Habeas Corpus and **ORDERS** the following:

(1) Respondents are **ORDERED** to **IMMEDIATELY TRANSFER** all Petitioners as a family unit to an FSA-compliant facility, and to **FILE** a Notice of Compliance, no later than **October 30, 2026**, confirming that Petitioners have been so transferred;

(2) If placement in an FSA-compliant facility is not practicable, Respondents are **ORDERED** to **IMMEDIATELY RELEASE** Petitioners H.M. and N.M. to their father, HAKUB MANUKYAN, and to **FILE** a Notice of Compliance, no later than **October 30, 2026**, confirming that Petitioners have been so released;[1] and

(3) The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: October 23, 2026

Honorable James E. Simmons Jr.
United States District Judge

[1] This Court recognizes that, because the FSA only applies to minors, Petitioner Kristina Aghajanyan's detention may not be found unlawful under Count I. *See Y.A.A. v. LaRose*, No. 3:26-CV-03071-LEK-VET, 2026 WL 1881585, at *8 (S.D. Cal. June 30, 2026) ("Petitioner also cannot seek habeas relief pursuant to the *Flores* Settlement Agreement because he is no longer a minor."). Further, the Court lacks jurisdiction to order Respondents to release Ms. Aghajanyan on humanitarian parole under 8 U.S.C. § 1152(d)(2)(A). *See Garcia v. Unknown Party*, No. CV-24-03062-DWL (DMF), 2025 WL 3173641 at *5 (D. Ariz. Oct. 10, 2025), *report and recommendation adopted*, No. CV-24-03062-PHX-DWL, 2025 WL 3172716 (D. Ariz. Nov. 13, 2025) (collecting cases in the Ninth Circuit holding the same).

However, the Court urges Respondents to consider humanitarian parole for Ms. Aghajanyan. This is both permitted under federal regulations and encouraged under agency standards. *See* 8 C.F.R. 212.5(b)(3)(ii) ("Minors may be released with an accompanying parent or legal guardian who is in detention."); Bureau of Customs and Border Protection, *National Standards on Transport, Escort, Detention, and Search*, Dep't Homeland Sec. § 1.9 (Oct. 2015) ("CBP will maintain family unity to the greatest extent operationally feasible, absent a legal requirement or an articulable safety or security concern that requires separation.").